ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
**THE BACH LAW FIRM, LLC**
7881 W. Charleston Blvd, Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: aloraditch@bachlawfirm.com
*Reorganization Counsel for Debtors*

Electronically Filed January 30, 2015

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

    CARMINE VENTO and
    ANN M. VENTO,

               Debtors.

Case No. BK-S-13-16186-BTB

Chapter 11

**SECOND MOTION TO SELL PROPERTY OF THE ESTATE LOCATED AT 6737 SPENCER STREET, LAS VEGAS, NEVADA, FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f)**

    **OST REQUEST PENDING**
**Hearing Date:    February 11, 2015**
**Hearing Time:    10:00 a.m.**

        Reorganized debtors CARMINE VENTO and ANN M. VENTO, debtors and debtors in possession in the above-captioned case ("<u>Debtors</u>"), by and through their counsel of record, hereby submit this second motion (the "<u>Motion</u>") for an order of the Court approving the sale of property of the estate located at 6737 Spencer Street, Las Vegas, Nevada, free and clear of liens, claims and interests, pursuant to section 363 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). This Motion is made and based upon the following points and authorities, the Declaration of Greg Pancirov and the Declaration of Carmine Vento, both filed contemporaneously herewith and in support hereof, the papers and pleadings on file in the above-captioned bankruptcy case (the

"Chapter 11 Case") and any oral argument the Court may entertain at the time of any hearing on this Motion.

DATED this 30th day of January, 2015.

**THE BACH LAW FIRM, LLC**

By____*/s/ Anne M. Loraditch*_____
　　ANNE M. LORADITCH, ESQ.
　　Nevada Bar No. 8164
　　7881 W. Charleston Blvd, Suite 165
　　Las Vegas, Nevada 89117
　　*Reorganization Counsel for Debtors*

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND VENUE**

1.　　This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The statutory predicates for the relief sought in this motion are sections 363(b) and (f) of the Bankruptcy Code, as complemented by Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**II.**

**STATEMENT OF FACTS**

2.　　On July 17, 2013 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Code sections 1107 and 1108, Debtors continue to manage their properties as debtors in possession. The Court approved the appointment of Edward M. Burr, Jr., as an examiner in the Chapter 11 case pursuant to its Order entered March 25, 2014.

///

- 2 -

3.     On November 6, 2014, the Court entered its order approving Debtors' Chapter 11 Plan of Reorganization No. 3 dated September 22, 2014 (the "Confirmed Plan").  Docket No. 383.

4.     Prior to the Petition Date, Debtors purchased that certain real property located at 6737 Spencer Street, Las Vegas, Nevada (the "Property"), which they subsequently transferred to the Vento Family Trust dated June 14, 1990 (the "Family Trust").  Though legal title to the Property remains vested in the names of Debtors, as trustees of the Family Trust, Debtors revoked the Family Trust on October 16, 2014; thereby returning the Property to their bankruptcy estate.

5.     Debtors own the Property subject to (i) a security interest pursuant to a duly recorded first position deed of trust for the benefit of creditor Bank of Las Vegas ("BLV") in the original principal amount of $795,000.00, and (ii) a security interest pursuant to a duly recorded second position deed of trust for the benefit of creditor Valley Bank f/k/a Bank of North Las Vegas ("Valley Bank") in the original principal amount of $375,000.00.

6.     As of December 15, 2014, the total amount due and owing to BLV on its loan collateralized by the Property was $693,325.32 with minimum monthly payments due in the amount of $4,053.11, pursuant to the Confirmed Plan.

7.     As of October 15, 2014, the total amount due and owing to Valley Bank on its loan collateralized by the Property was $115,370.76 with monthly payments due in the amount of $715.83, pursuant to the Confirmed Plan.[1]

8.     On October 2, 2014, Debtors filed a motion [Docket No. 353] ("First Sale Motion") seeking Court approval of the sale of the Property for the sum of $1,160,000 pursuant to an option contract.  On October 30, 2014, the Court approved the First Sale Motion, which was unopposed. See Order Authorizing Sale of Property of the Estate Located at 6737 Spencer Street, Las Vegas, Nevada, Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363(f) [Docket No.

---

[1] Additionally, the Property is subject to monthly assessments in the amount of $750.00 with $45,309.69 in delinquent assessments and other costs owed to the Airport Plaza Phase 3 Owners' Association as of the Petition Date.  Of this amount, the sum of $6,750.00, equal to 9 months' assessments, was secured by a statutory lien having superpriority over the Bank of Las Vegas and Valley Bank security interests, pursuant to Nevada Revised Statutes 116.3116.  Pursuant to the Confirmed Plan, the superpriority amount was satisfied and paid in full on or before the Effective Date.

401].  Escrow on that sale was anticipated to occur sometime this month provided the buyer continued to timely pay the option extension fees due under the contract.  However, that buyer failed to timely pay the option extension fee for January 2015, and the option contract has now terminated pursuant to its terms.

9.    As a result of the termination of the option contract, the Property is no longer generating any income.  Consequently, Debtors and their real estate agent[2] went back to work to find a qualified buyer for the Property as quickly as possible since the sale of the Property is an integral part of the Confirmed Plan.

10.    Negotiations with a new prospective buyer ("Buyer") quickly ensued and culminated in an executed agreement (the "Purchase Agreement") for the sale of the Property for the sum of $1,180,000, which is $20,000 more than the sale previously approved by the Court. A true and correct copy of the Purchase Agreement is attached to the Pancirov Declaration as **Exhibit A** and is incorporated for all purposes herein by this reference.

11.    Although Court approval is not required for the sale of the Property under the Confirmed Plan,[3] Debtors and Buyer agreed that the Purchase Agreement shall be subject to entry of an order of the Court approving the sale as a condition precedent to the close of escrow due to the title company's requirements.  See Purchase and Sale Agreement, at Addendum #1, ¶ 1.

12.    The Purchase Agreement provides that Buyer shall have 21-days to conduct its due diligence on the property, commencing Friday, January 30, 2015, and concluding Sunday, February 20, 2015 (the "Due Diligence Period"), during which Buyer may conduct a feasibility study of the Property and during which Buyer's performance is subject to Buyer's approval or waiver of various contingencies as set forth in the Purchase Agreement; including, but not limited to:  preliminary title report, property inspection at Buyer's cost, and verification of zoning, utilities and environmental reports for the Property.  Purchase Agreement, §§ 1, 4.1.  The Purchase Agreement also provides that the close of escrow shall occur on or before 21 days following the

---

[2] On February 24, 2014, the Court entered an Order [Docket No. 186] approving Greg Pancirov of Colliers as Debtors' real estate agent with respect to the Property.
[3] See Confirmed Plan, Article VI.A.

- 4 -

Due Diligence Period.  Purchase Agreement, § 1.  The proposed sale is <u>not</u> contingent on financing.

13.     The Purchase Agreement provides for an earnest money deposit in the amount of $50,000, which funds have already been paid over to Buyer's counsel.  Purchase Agreement, § 1; <u>see also</u> Pancirov Declaration, at **Exhibit B** (Buyer's check in the amount of $50,000).  Moreover, Buyer will be paying cash for the Property and has the means to do so.  Pancirov Declaration, at **Exhibit C** (copy of letter from US Trust).  Exhibits B and C to the Pancirov Declaration are incorporated for all purposes herein by this reference.

14.     Debtors are informed and believe that Buyer desires to close escrow at the earliest possible opportunity and is already working to approve of or waive the various contingencies set forth in the Purchase Agreement.  Debtors are also anxious to close at the earliest possible opportunity given the absence of revenue currently being generated by the Property.

15.     In any event, close of escrow is to be no later than 42 days from the date the parties executed the Addendum #1 to the Purchase Agreement.  Purchase Agreement, § 1; Addendum, ¶ 16.

16.     The proposed sale price of $1,180,000.00 reflects the fair market value for the property.  <u>See</u> Comparative Market Analysis attached as **Exhibit D** to the Pancirov Declaration and incorporated for all purposes herein by this reference.

17.     At settlement, Debtors propose to pay commissions to brokers, fees to the title company for closing costs, taxes, payment in the amount of $6,750.00 in full satisfaction of the Association's superpriority interest, 125% of the amount required to satisfy Bank of Las Vegas' first position lien, and 100% of the amount required to satisfy Valley Bank's second position lien pursuant to the terms of the settlement set forth in the Confirmed Plan.  In addition, Debtors propose to pay the sum of $11,000.00 directly from escrow at closing to repay monies borrowed in order to service the debt on the Property as necessitated by the previous buyer's default under the option contract.  The sale of the Property is expected to generate at closing proceeds in excess of the amounts required to pay all of the foregoing sums.  Debtors propose that all remaining net

///

1  sale proceeds be paid to BLV pursuant to the terms of the settlement embodied in the Confirmed

2  Plan.

3      18.    Thus, in closing the proposed sale, Debtors will satisfy their fiduciary duty owed to

4  their creditors under the Confirmed Plan and will maximize value by obtaining the best price for

5  the Property on the best terms possible.

6      19.    The Buyer is not an insider of Debtors or otherwise related to Debtors.   The

7  Purchase Agreement was negotiated in good faith in an arm's-length transaction.   Accordingly,

8  the Buyer should be afforded the fullest "good faith purchaser" protections provided under the

9  Bankruptcy Code.

10      20.    At closing, Debtors propose to pay commissions totaling 6% of the purchase price,

11  equal to $70,800.00, to be divided as follows:  $23,600.00 to Colliers International, $23,600.00 to

12  ACRES Commercial, and $23,600.00 to Michael R. Mushkin & Associates.  All commissions will

13  be paid by through escrow at the time of closing.

14      21.    Debtors believe the proposed sale of the Property is in the best interests of creditors

15  and the bankruptcy estate because the sale will facilitate Debtors' performance of their obligations

16  under the Confirmed Plan, relieve Debtors of substantial debt as well as ongoing costs associated

17  with the maintenance of the Property, and fully satisfy the superpriority, first position and second

18  position liens held by the Association, Bank of Las Vegas and Valley Bank, respectively.  See

19  Fidelity National Title Preliminary Report dated June 13, 2014, attached as **Exhibit E** to the

20  Pancirov Declaration and incorporated for all purposes herein by this reference.

**III.**

**LEGAL ARGUMENT**

**A.    Legal Standard.**

24      Bankruptcy Code section 363(b)(1) authorizes the Court's approval of the sale of the

25  Property, as proposed by this Motion.  11 U.S.C. § 363(b)(1).  The sale of the assets of a debtor

26  outside the ordinary course of business may be approved by a bankruptcy court when:  (i) there is

27  a sound business reason for the sale; (ii) accurate and reasonable notice is provided to interested

parties; (iii) the price is fair, reasonable and adequate; and (iv) the sale is made to the purchaser in good faith. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., Four B. Corp. v. Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997); Official Committee of Subordinated Bondholders v. Integrated Resources, Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) (the objective of bankruptcy sales and a debtor's duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate).

Bankruptcy Code section 363(f) authorizes a trustee to sell property outside of the ordinary course of business "free and clear of any interest in such property of an entity other than the estate, only if –

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).

The Bankruptcy Code also provides a nonexhaustive list of allowable administrative expenses that include "the actual, necessary costs and expenses of preserving the estate . . . for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A); see In re Kadjevich, 220 F.3d 1016, 1019 (9th Cir. 2000) citing In re Megafoods Stores, Inc., 163 F.3d 1063, 1071 (9th Cir. 1998) (explaining that the list of particular administrative expenses contained in section 503(b) is nonexhaustive). Such administrative expenses are deemed "standard" and include a debtor in possession's obligations arising from the postpetition provision of goods and/or services. Kadjevich, at 1019 ("In general, postpetition business expenses are granted administrative-expense priority so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize."); see In re DAK Industries, Inc., 66 F.3d 1091,

1   1097 (9th Cir. 1995) ("Payment of administrative expenses allows the debtor to secure goods and
2   services necessary to administer the estate, which ultimately accrues to the benefit of all
3   creditors.").

4   **B.      The Proposed Sale Was Negotiated in Good Faith for a Purchase Price Reflecting the**
5           **Fair Market Value of the Property.**

6           The agreed-upon purchase price of $1,180,000 is the result of arms-length negotiations;
7   including, offers and counteroffers conducted by Debtors and their representatives with the Buyer.
8   This process ensures:  (i) the adequacy of the purchase price for the Property; and (ii) the bona
9   fides and good faith of the Buyer.  There have been no prior dealings, co-ownership interests, or
10  collaborative endeavors between Debtors and Buyer, nor are there any assurances or agreements
11  regarding future dealings between them other than as stated in the Purchase Agreement.
12  Throughout the negotiations leading up to the Purchase Agreement, there were no instances of
13  self-dealing or manipulation.  Instead, the Purchase Agreement is based upon what each of the
14  parties could negotiate through an arms-length transaction.   The evidence before the Court
15  supports a finding that the proposed sale of the Property was negotiated in good faith.

16          After months of marketing the Property as the business operations continued to struggle,
17  Debtors first sold the Property at a price determined to be the fair market value of the Property and
18  subsequently approved by the Court with no opposition having been filed to the First Sale Motion.
19  After the first sale fell through due to that buyer's inability to make timely option extension
20  payments, Debtors have determined the instant sale is for a price that is the highest and best price
21  for which the Property may reasonably be sold at this time.  Accordingly, Debtors believe that the
22  proposed sale of the Property is in the best interests of their creditors and the estate.

23  **C.      The Property May Be Sold Free and Clear of Liens, Claims and Interests.**

24          Bankruptcy Code section 363(f) provides for the sale of estate property free and clear of
25  liens, claims and interests where any one of the five requisites codified in sections 363(f)(1)-
26  363(f)(5) is met.  11 U.S.C. § 363(f).  Indeed, the Court may approve the proposed sale of the
27  Property for less than the respective aggregate total of the liens against it.  In re Jolan, Inc., 403

B.R. 866 (Bankr. W.D. Wash. 2009).  In <u>Jolan</u>, the bankruptcy court concluded that a sale free and clear of liens over the objection of the junior creditor was not prohibited, holding that several mechanisms could exist to satisfy the "legal or equitable proceeding" referenced in Section 363(f)(5).  That court pointed to several proceedings that existed under Washington law, including a UCC Article 9 sale of personal property; a sale by a receiver free and clear of liens; a state or federal tax sale; a probate court sale; or a judicial or nonjudicial foreclosure sale of real property where liens attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed.  <u>Jolan</u>, at 869.

In this case, the same proceedings pointed to by the <u>Jolan</u> court exist under Nevada law; any one of which satisfy the "legal or equitable proceeding" component referenced in Section 363(f)(5).  In particular, a judicial or nonjudicial foreclosure sale of real property where liens attach to proceeds in excess of the costs of sale and the obligation or judgment foreclosed is most analogous to the proposed sale of the Property.  Debtors assert that any lien, claim or interest attached to the Property prior to the sale and not paid directly through escrow at closing, if any, is subject to the terms and provisions of the Confirmed Plan previously approved by this Court..

Moreover, the proposed sale will realize the full economic value of the lienholders' interests in the property since claims are only allowed as secured claims under Bankruptcy Code section 506(a) to the extent there is equity in the creditors' collateral.  <u>In re Terrace Gardens Park P'ship</u>, 96 B.R. 707 (Bankr. W.D. Tex. 1989).  In that case, the debtor was selling two of its six fully encumbered office buildings for less than half of the combined secured debts.  Focusing on the Bankruptcy Code's requirement that a secured creditor is entitled to adequate protection, but only protection equivalent to its interest in the value of the collateral and not the face amount of a secured creditor's claim, the court approved the sale.  <u>Id</u>.

The economic value approach is also fitting with respect to the proposed sale of the Property.  While there are liens asserted against the Property, there can be no argument that such liens trump those liens Debtors propose to satisfy out of the sale proceeds pursuant to the terms and provisions of the Confirmed Plan.  With respect to the Property, a willing seller has agreed to

sell for a price a willing buyer has agreed to pay – the classic definition of market value.  Further, given the history of marketing the Property as set forth in the Pancirov Declaration and the recent termination of the option contract for the first sale of the Property, Debtors have maximized value for the bankruptcy estate for the benefit of all of their creditors who will reap the rewards of unloading a substantial debt burden and ongoing maintenance costs associated with the Property and Debtors'.

Consequently, the Court can and should approve the proposed sale free and clear of liens, claims and interests pursuant to Bankruptcy Code section 363(f)(5).

## IV.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Debtors respectfully request that the Court enter an order approving the proposed sale of the Property on the terms and conditions set forth herein and granting such further relief as the Court deems just and proper.

DATED this 30th day of January, 2015.

THE BACH LAW FIRM, LLC

By____/s/ Anne M. Loraditch_____
     ANNE M. LORADITCH, ESQ.
     Nevada Bar No. 8164
     7881 W. Charleston Blvd, Suite 165
     Las Vegas, Nevada 89117
     *Reorganization Counsel for Debtors*